**Sandy Patrick KERNS, Appellant,**

v.

**Robert F. PARRATT, Warden, Appellee.**

No. 81–2283.

United States Court of Appeals,
Eighth Circuit.

Submitted March 11, 1982.

Decided March 17, 1982.

Rehearing and Rehearing En Banc
Denied April 13, 1982.

Peter K. Blakeslee, Lincoln, Neb., for appellant.

Paul L. Douglas, Atty. Gen. of Neb., John Boehm, Asst. Atty. Gen., Lincoln, Neb., for appellee.

Before HEANEY, BRIGHT and HENLEY, Circuit Judges.

PER CURIAM.

Sandy Kerns, an inmate at the Nebraska State Penitentiary, appeals from the district court's[1] denial of his habeas corpus petition filed pursuant to 28 U.S.C. § 2254. Kerns advances four grounds for the issuance of a writ of habeas corpus, each of which was rejected below. We affirm.

Kerns pled guilty in 1975 to charges of rape and robbery and was sentenced to ten years on the rape count and five to ten years on the robbery count, to be served concurrently. These convictions are not at issue here. While serving his sentence, Kerns allegedly raped one of his cellmates, which led to both prison disciplinary action and to criminal charges. Through prison administrative proceedings, Kerns was determined to have violated inmate disciplinary rules and therefore lost more than three years accrued "good time" credits. Kerns was also charged with first degree sexual assault and with being an habitual offender. A jury found Kerns guilty on the sexual assault charge in February, 1981. Because this was his third conviction, the state court adjudged Kerns to be an habitual offender and sentenced him to twelve to fifteen years to be served consecutively with the prior sentences.

■ Kerns first argues that the double jeopardy clause bars criminal prosecution for the assault because he had been previously punished through the loss of statutory good time. This argument is without merit. The loss of good time credits arose through administrative proceedings based upon violation of prison disciplinary rules. Although due process protection is implicated, such proceedings do not place an offender in jeopardy for purposes of the double jeopardy clause. It is well settled that there is no bar to separate criminal prosecution for

---

1. The Honorable Warren K. Urbom, Chief Judge, United States District Court for the District of Nebraska.

an offense such as Kerns' assault upon his fellow inmate. *See, e.g., United States v. Cluck*, 542 F.2d 728, 735 (8th Cir. 1976); *United States v. Salazar*, 505 F.2d 72 (8th Cir. 1974).

█ Kerns next contends that an evidentiary ruling by the state trial court was erroneous and sufficiently prejudicial as to warrant habeas corpus relief. The state court admitted into evidence a bedsheet taken from Kerns' "deadlock cell" to which he had been transferred after the alleged assault. The foundation for this exhibit was testimony that it is prison routine to transfer an inmate's bedding along with the inmate when he is transferred into deadlock. Kerns argues there is a fatal gap in the chain of custody in that the state could not affirmatively establish that the linen was on Kerns' bed in the cell where the assault took place. The state argues that prison routine is a sufficient foundation to permit the jury to infer that the linen was in the relevant cell at the relevant time.

We need not decide this issue because we are persuaded that admission of the exhibit, whether erroneous or not, did not so prejudice Kerns as to justify habeas relief. The only significance of the exhibit was related testimony that it contained a semen stain with a blood type which matched that of both Kerns and the victim. Although this evidence arguably shows an increased likelihood that sexual activity took place, it alone does not prove that there was a sexual assault much less that Kerns committed the assault. Thus, Kerns could not have been so prejudiced by the evidence as to warrant habeas corpus relief.

█ The third and fourth claims raised by Kerns involve the constitutionality of the Nebraska habitual offender statute as applied in this case. Kerns contends that the statute violates the separation of powers doctrine by conferring excessive sentencing discretion upon prosecutors. He also argues that because his first two convictions arose from the same "criminal episode," it is unconstitutional to treat his next "episode" as a third offense for purposes of the statute. Kerns concedes, however, that his first two convictions involved separate counts (rape and robbery) and that the Nebraska Supreme Court has held the habitual offender statute properly applies to a third conviction even where the first two convictions are not separated by any time interval. *See State v. Pierce*, 204 Neb. 433, 283 N.W.2d 6 (1979). Kerns' third constitutional attack is essentially that the foregoing factors render application of the habitual offender statute violative of the Eighth Amendment ban against cruel and unusual punishment. We summarize Kerns constitutional claims because each of them has been considered and squarely rejected by this Court. *See Pierce v. Parratt*, 666 F.2d 1205 (1981); *Brown v. Parratt*, 560 F.2d 303 (8th Cir. 1977); *Martin v. Parratt*, 549 F.2d 50 (8th Cir. 1977).

The district court is therefore affirmed.

HEANEY, Circuit Judge, concurring, with whom, BRIGHT, Circuit Judge, joins.

I join in the court's rejection of the double jeopardy and evidentiary claims raised by the petitioner. With respect to the petitioner's constitutional attack on the habitual offender statute, however, I concur only because we must adhere to the Court's earlier decisions in the cases noted above. The concerns I expressed in *Brown v. Parratt*, 560 F.2d 303, 305 (8th Cir. 1977), and in *Pierce v. Parratt*, 666 F.2d at 1207–08 (1981), apply with special force in the present case.

The essential rationale of habitual offender statutes is to enhance the punishment for a crime when the person committing it had repeatedly failed at rehabilitation, as demonstrated by a pattern of crime following periods of rehabilitation. This logic requires that there must be some period of rehabilitation—be it incarceration or an alternative sentence—between the offenses which are counted toward determining habitual status.

Here, prior to the petitioner's prison incident, he had been arrested once, tried once and sentenced once to a concurrent term for having committed offenses on the same day. He might reasonably expect that a new offense would be his second incident in terms of recidivism. Instead, for an inci-

dent that took place while he was still serving the one prison term Kerns had ever received, he was suddenly deemed a three-time habitual offender. Such an application of the habitual offender statute reflects the unbridled sentencing discretion conferred upon prosecutors.

I do not wish to understate the seriousness of the petitioner's offense within the prison and note that, standing alone, this offense carries substantial penalties. My objection is to invoking the habitual offender statute in these circumstances which, in my view, does not comport with the fundamental fairness that is the touchstone of our constitutional guarantees.